UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW SEVIER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| CAROLYN W. COLVIN, acting Commissioner of the Social Security Administration, | ) Cause No. 1:13-cv-763-WTL-MJD ) ) ) |
| Defendant. | ) ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Andrew Sevier requests judicial review of the final decision of the Defendant denying Mr. Sevier's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

### I. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his

ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## II. BACKGROUND

Andrew Sevier filed for DIB on May 4, 2010, alleging he became disabled on November 3, 2008. Mr. Sevier was born on May 18, 1978, and he was 30 years old on the alleged disability

date. He attended two years of college and four years of electrical training. He worked as an electrician and maintenance supervisor. In his application for benefits, Mr. Sevier alleged that he was disabled due to chronic pain, numbness in his legs, multiple bulging discs, spinal stenosis, depression, osteoarthritis, and hypertension. He also alleged that he was disabled due to surgery that removed a tumor.

Mr. Sevier's application was denied initially on July 22, 2010, and upon reconsideration on September 7, 2010. He requested and was granted a hearing before an Administrative Law Judge ("ALJ"). On September 1, 2011, Mr. Sevier appeared with counsel and testified at an administrative hearing before ALJ Albert J. Velasquez. ALJ Velasquez issued his decision denying Mr. Sevier's application on October 19, 2011. On February 9, 2013, the Appeals Council denied review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to judicial review.

*Medical Evidence*

Mr. Sevier's medical record begins in December 2007 when he saw an emergency room doctor for back pain. An x-ray of his spine showed a possible muscle spasm. Other findings looked normal with no fractures or areas of bone destruction. The treating doctor prescribed Hydrocodone and Ibuprofen. R. at 238.

On October 27, 2008, Mr. Sevier saw his primary care physician, Dr. Julie Vannerson, for lower back pain. She prescribed Hydrochlorothiazide, Methocarbamol, and Oxycodone. She referred him for an MRI, physical therapy, and a neurosurgery consultation. *Id.* at 241. On November 25, 2008, Mr. Sevier had an MRI. It showed abnormal findings at C7 and a generalized disc bulge at L4-L5 with moderate stenosis on the left and mild stenosis on the right. It also showed left-sided posterior disc protrusion at L5-S1 with moderate left foraminal stenosis

3

and mild to moderate left stenosis with displacement of the S1 nerve root. *Id.* at 242. On December 15, 2008, Dr. Vannerson referred Mr. Sevier for a neurosurgery consultation for pain management suggestions. She also suggested a physical therapy consultation to evaluate, treat, and rehabilitate his slipped disc. She prescribed Diazepam and Hydrochlorothiazide and discontinued Methocarbamol. *Id.* at 243.

On January 14, 2009, Mr. Sevier was brought to the emergency room after he was found unresponsive and covered in vomit following an overdose on muscle relaxants. *Id.* at 244-48. On February 11, 2009, he returned to the emergency room with complaints of depression and anxiety. He did not have any physical complaints. He was given a one-week supply of Prozac. *Id.* at 262-64.

On March 10, 2009, Dr. Vannerson noted that Mr. Sevier had degenerative disk disease. She noted that he had several lumbar discs bulging and had localized pain in the area. She spent thirty minutes counselling him about proper medication use, expectations for his pain, and the multimodality approach to pain management, which included physical therapy, "medications, treatment of his depression and advice from neurosurgery as he does have real disease on his MRI." She prescribed Sulindac and recommended a physical therapy consultation that would provide a home exercise program. *Id.* at 235-36.

On June 15, 2009, Mr. Sevier had a consultation at the neurology clinic with Dr. Scott Shapiro. Dr. Shapiro noted that Mr. Sevier "does not have symptoms consistent with any true radiculopathy." He recommended selective nerve root blocks to try to assess whether surgery would benefit the claimant. *Id.* at 234-35. In October 2009, Mr. Sevier underwent this procedure. He reported that it resolved his left leg pain but not his back pain. *Id.* at 232-33.

On February 5, 2010, Mr. Sevier returned to Dr. Vannerson. He reported that the Diazepam and Oxycodone were helping his lower back pain. Dr. Vannerson told him that they would need to try other medications for better control. She refilled his prescriptions and added Duloxetine for his pain and depression and anxiety. *Id.* at 231.

On June 21, 2010, Mr. Sevier underwent a psychological exam with Dr. Paul Deardorff, PhD, a State Agency doctor. Dr. Deardoff noted that Mr. Sevier appeared anxious and depressed. *Id.* at 272. On June 26, 2010, Mr. Sevier underwent a physical examination with Dr. Hans Mouser, another State Agency doctor. Dr. Mouser noted that Mr. Sevier was taking Percocet five times a day. He also noted that Mr. Sevier had lumbago with likely degenerative disease of the lumbosacral spine, hypertension, anxiety, and depression. *Id.* at 282-84.

On July 8, 2010, Dr. Joelle Larsen, PhD, a State Agency doctor, completed a psychiatric review of Mr. Sevier. She noted that he was currently looking for a job. *Id.* at 298.

On July 13, 2010, Dr. R. Bond, a State Agency doctor, completed a physical Residual Function Capacity ("RFC") assessment. Dr. Bond found that Mr. Sevier could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk about six of eight hours, and sit about six of eight hours. Dr. Bond found that Mr. Sevier could never climb ladders, ropes, or scaffolds. *Id.* at 301-02.

On September 3, 2010, Mr. Sevier returned to Dr. Vannerson with complaints of lower back pain. She referred him for another neurosurgery consultation. She refilled his prescriptions and added Lyrcia to help with the pain. *Id.* at 317. On October 22, 2010, Mr. Sevier saw Dr. Vannerson with complaints of severe back pain and his legs "giving out" while working. She refilled his prescriptions and added morphine. *Id.* On January 3, 2011, Mr. Sevier underwent

another neurological consultation. The consulting doctors did not recommend surgical options because surgery would have offered limited success based on his studies and imaging. *Id.* at 319.

On April 27, 2011, an orthopedic examination revealed that Mr. Sevier had pain in the L5 and S1 nerve roots on his left side and diskogenic pain. The treating doctor recommended selective nerve root blocks, a diskogram, and a disk replacement. *Id.* at 334.

On July 22, 2011, Dr. Vannerson completed a questionnaire. She noted that Mr. Sevier could occasionally lift and carry up to twenty pounds but could never lift or carry more than twenty pounds. She concluded that he could sit for one hour, stand for thirty minutes, and walk for fifteen minutes at a time. She opined that he could sit for four hours, stand for two hours, and walk for one hour throughout an eight hour work day. She noted that he could not climb, stoop, kneel or perform other activities that involve back movement, and that he could not walk at a reasonable pace on rough or uneven surfaces. *Id.* at 338-43.

*Hearing Evidence*

At the hearing, Mr. Sevier testified that he was unable to continue working due to chronic pain. He testified that he lost his job because of absenteeism. He said he could stand for about twenty to thirty minutes before the pain in his back and legs began to bother him. He said he lived with his mother, step-father, and niece. He testified he never knew when his legs were going to give out and that he had fallen a couple times. He said injections did not help his pain and that while medications helped somewhat, he still experienced a lot of pain. He said he watched his daughter, who did not live with him, but usually needed his mother's help, and he noted that he occasionally did housework.

Stephanie Russell, Mr. Sevier's mother, also testified at the hearing. She testified that when Mr. Sevier tried to go to work, he would come home within an hour or two, and then

6

would be in bed for three to four days. She also testified that he had trouble sleeping. She said that when he did his home exercise program, he stretched on the bed, and "he ha[d] some things in the garage that he trie[d] to do" that made him feel worse. *Id.* at 46.

Gail Corn, a vocational expert ("VE"), also testified. The ALJ asked the VE to consider a hypothetical individual with Mr. Sevier's age, education and work experience who could perform work with the following restrictions: lift and carry ten pounds occasionally and five pounds frequently; stand and walk for two of eight hours; sit for six of eight hours; alternate in a sitting or standing position for one or two minutes each hour; no more than occasional climbing of stairs or ramps; no climbing of ropes, ladders, or scaffolds; and no kneeling, crouching, crawling, or overhead work. The VE testified that such an individual could perform work as an information clerk, a machine operator, and an assembler.

### III. DISCUSSION

In his brief in support of his request for judicial review, Mr. Sevier presents two issues for the Court's review. First, he argues that the ALJ failed to assess an accurate RFC that incorporated all of his impairments. Second, he argues that the ALJ's credibility finding is not supported by substantial evidence and fails to incorporate his subjective complaints of pain. The Court will address each argument, in turn, below.

#### A. Erroneous RFC

Mr. Sevier first claims that the ALJ failed to weigh and consider all of the evidence in assessing his RFC and, therefore, his RFC assessment is erroneous. In support of his argument, Mr. Sevier merely recites his medical record, concluding that he is unable to work. He also notes that his daily activities are greatly limited and that some days he can only lie on his back. Pl.'s Br. at 8. The Court does not find these arguments to be persuasive.

7

In assessing an RFC, "an ALJ must consider all of the evidence and must explain its decision such that it may be meaningfully reviewed." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). It is clear from the ALJ's decision that he did consider all of the evidence in determining Mr. Sevier's RFC. The ALJ relied on the records from his primary care physician, the neurological consultations, and the State Agency doctors. He also relied on Dr. Vannerson's questionnaire regarding Mr. Sevier's functional abilities, which stated that Mr. Sevier could sit for four hours, stand for two hours, and walk for one hour throughout an eight hour work day. The ALJ also recognized that no physician determined that Mr. Sevier was unable to perform work related activities, and that Drs. Vannerson and Bond noted that he is capable of performing work related activities subject to certain limitations. R. at 23. By concluding "that his functioning is consistent with the less than sedentary exertional level," *id.*, of sitting for six hours, standing for two hours, and walking for two hours during an eight hour day, it is clear that the ALJ adequately addressed Mr. Sevier's limitations in assessing his RFC.

Mr. Sevier also argues that he is disabled because when Mr. Sevier's attorney asked the VE at the hearing about a hypothetical claimant who needed to lie down during the day, the VE said that all work would be precluded. Again, the Court finds this argument unpersuasive.

"[T]he ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) (noting that "the ALJ posed appropriate hypothetical questions to the vocational expert based on his determination of [the claimant's] residual functional capacity, and the vocational expert testified that [the claimant] could perform a significant number of jobs."). Here, the hypothetical that the ALJ posed to the VE, which did not incorporate Mr. Sevier's alleged need to lie down, was based on the impairments and limitations that he found credible. Because the ALJ did not

find Mr. Sevier's need to lie down to be a credible impairment, he was not required to include it in his hypothetical or to factor it into his RFC assessment. In all, the Court is satisfied with the ALJ's RFC assessment.

### B. The ALJ's Credibility Determination

Mr. Sevier next argues that the ALJ erred in assessing his credibility. In examining credibility determinations, the Court will not overturn the ALJ's conclusions "unless they were patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

Once again, Mr. Sevier merely recites his medical record, concluding that he is unable to work. Mr. Sevier also argues that the ALJ improperly used the fact that he performs minor household chores and takes care of his daughter to show that he is capable of performing full-time work. Pl.'s Br. at 12. The Court disagrees. The ALJ's discussion of Mr. Sevier's daily activities did not mention either of these activities. Instead, the ALJ found "that the claimant's activities of daily living are consistent with his alleged symptoms and limitations." R. at 24. This was not an error.

In addition to discussing his daily activities, the ALJ also specifically addressed each of the other factors provided in SSR 96-7p, including Mr. Sevier's symptoms, aggravating factors, medications, measures taken for pain relief, and other factors. The ALJ found the "other factors" to be dispositive in his credibility determination. First, the ALJ found Mr. Sevier less credible because he had collected unemployment benefits in 2009 and 2010. As a condition of collecting

9

unemployment, Mr. Sevier had to certify that he was able to look for and accept employment. The ALJ thus found that Mr. Sevier did not believe that his limitations impeded his ability to secure a job. *Id.* Second, the ALJ found Mr. Sevier less credible because although his doctors recommended physical therapy, there is no evidence that Mr. Sevier actually pursued such treatment. *Id.* at 24-25. The ALJ found that Mr. Sevier's failure to consult a physical therapist "indicates that his symptoms are not as debilitating as he alleged." *Id.* at 25. The ALJ also found Mr. Sevier to be less credible because of the inconsistencies between his allegations, the medical record, and his prescribed treatment. *Id.* at 25.

In all, the Court finds that the ALJ built a logical bridge between the evidence and his conclusion and is satisfied with the reasoning behind his credibility determination.

## IV. CONCLUSION

The ALJ in this case satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 06/16/2014

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication